UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOMINICK VALENTI,

    Plaintiff,

v().                                      Case No.  8:04-cv-1615-T-30TGW

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Unum Life Insurance Company of America's Dispositive Motion for Final Summary Judgment and Incorporated Memorandum of Law (Dkt. 107), Plaintiff's Response in opposition to the Motion (Dkt. 128), and hearing on the same.  For the reasons set forth below, this Court finds Defendant's Motion is **GRANTED in part and DENIED in part.**

### FACTUAL BACKGROUND[1]

On April 1, 2000, Plaintiff became insured under his employer's long term disability plan.  On October 31, 2001, Plaintiff filed a claim for disability from his occupation due to acute stress disorder and major depressive disorder, he allegedly obtained after Plaintiff was

---

[1] As Plaintiff has provided no opposition to Defendant's version of the undisputed material facts, the Court will adopt those undisputed facts as stated in Defendant's Motion for Summary Judgment.

assaulted at work by his supervisor.  According to Plaintiff's attending physician, Dr. M.K. El-Yousef, Plaintiff, as a result of his disorders, was unable to cope with the work stress created in his work environment and therefore was limited from working.  Dr. El-Yousef indicated Plaintiff's prognosis for recovery was fair.

From August 17, 2001 to October 6, 2001, Plaintiff was an in-patient for depression and anxiety at Fairwinds Treatment Center (hereinafter "Fairwinds").  After being discharged from Fairwinds, Plaintiff, on November 1, 2001, began treatment with Thomas Wekenman, MS, LMHC.  In Mr. Wekenman's treatment notes, he opined, " [Mr. Valenti] feel[s] as if he has a plan he is pursuing to not only return to work, but to be evaluated for SSI benefits.  A lawyer is working on that case at this time.  Mr. Valenti is concerned that if he does attempt to return to work he will jeopardize that case."

On November 16, 2001, Plaintiff was offered a job in North Florida.  However, on December 7, 2001, Mr. Wekenman noted that while Plaintiff had interviewed for a job in the Panhandle of Florida, the position was held for one year to allow the law suit Plaintiff initiated with the City of Tampa to conclude.

On January 3, 2002, Stan Vogel reviewed Plaintiff's records and determined the diagnoses of major depressive disorder and passive-dependant personality disorder were more supported than the diagnosis of post traumatic stress disorder.  Mr. Vogel further opined that Plaintiff's restrictions and limitations from the diagnosis were only supported during the period of inpatient treatment.  According to Mr. Vogel, it was unclear whether

Plaintiff was able to return to work or whether he was choosing not to return to work due to his ongoing litigation.

On January 3, 2002, Dr. David A. Goldsmith, Ph.D. also reviewed Plaintiff's mental health records. Similar to Mr. Vogel, Dr. Goldsmith opined that he found no "compelling clinical evidence that the [Plaintiff] has been unable to work due to mental illness, particularly after 10/05/01." Subsequently, Plaintiff's claim was denied. Plaintiff thereafter appealed Defendant's claim determination. On February 26, 2002, Defendant upheld its initial claim determination.

Plaintiff filed a civil remedy notice on April 18, 2002, alleging Defendant engaged in bad faith when it "represented that [Plaintiff's] insurance was governed by ERISA when it was not[;] failed to adequately investigate [Plaintiff's] disability status and failed to conduct a medical exam." On April 26, 2002, prior to the expiration of the sixty day cure period, Plaintiff filed a breach of contract lawsuit against Defendant.[2] On December 5, 2002, Plaintiff filed another civil remedy notice wherein Plaintiff identified violations that occurred during litigation, i.e. Defendant's failure to mediate Plaintiff's claim in good faith by allowing a company representative to attend mediation without, according to Plaintiff, adequate settlement authority.

---

[2] Plaintiff's breach of contract action went to trial in October 2003. The trial resulted in a favorable verdict for Plaintiff. Defendant satisfied the judgment in the breach of contact action including payment of Plaintiff's attorney's fees.

On June 22, 2004, Plaintiff filed the instant action in state court. In his Complaint, he alleged bad faith in Defendant's handling of Plaintiff's insurance claim as alleged in Plaintiff's April 2002 civil remedy notice (Count I) and bad faith in settling Plaintiff's claim as alleged in Plaintiff's December 2002 civil remedy notice (Count II). This action was subsequently removed to this Court on July 13, 2004.

## II.  DISCUSSION

### A.  Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### B.  Legal Analysis.

*1. Count I.*

In Count I of the Complaint, Plaintiff alleges Defendant handled his claim for disability insurance in bad faith by failing to cure those violations set forth in Plaintiff's April

18, 2002 civil remedy notice, i.e., Defendant failed to adequately investigate Plaintiff's disability status and failed to conduct a medical exam.[3]

Pursuant to Florida Statute Section 624.155(3)(b), a civil remedy notice "shall state with specificity . . . [t]he facts and circumstances giving rise to the violation." *Fla. Stat. §* 624.155(3)(b) (2005). Defendant argues that while Plaintiff's April civil remedy notice states Defendant conducted an inadequate investigation, Plaintiff failed to identify specifically *what* Defendant failed to which made the investigation inadequate. This lack of specificity, according to Defendant, is insufficient as the notice does not adequately identify what conduct of Defendant's must be cured. This Court agrees.

The purpose of the civil remedy notice is to provide insurers one last opportunity to settle a claim with the insured to avoid unnecessary bad faith litigation. See Lane v. Westfield Ins. Co., 862 So.2d 774, 779 (Fla. 5th DCA 2003). However, the civil remedy notice must be specific enough to provide insurers notice of the wrongdoing so the insurer can cure the same within sixty days. Id. at 777 (adopting the trial court's reasoning). Plaintiff's counsel, during the hearing in this matter, argued a civil remedy notice that states "you denied my claim" should be sufficient to place the insurer on notice of what was needed to be cured. Plaintiff's counsel further argued that it was up to the insurer, as the insurance expert, to decipher what actions needed to be cured. This argument, in this Court's

---

[3] Plaintiff also alleged in both his April and December civil remedy notices, Defendant's misrepresentation that Plaintiff's insurance was governed by ERISA. However, at the hearing on this matter, Plaintiff's counsel indicated Plaintiff was no longer pursuing this claim.

estimation, is illogical and is counter to the purpose of the civil remedy notice. If a simple "you denied my claim" was sufficient to put insurers on notice, the sixty day cure period would be little more than a guessing game with the insurer attempting to correctly guess what errors the insured claimed it made in the claims handling process, or risk defending a bad faith action. This surely is not what the legislature had in mind when it created the civil remedy notice. Accordingly, this Court finds that Plaintiff's allegation that Defendant failed to conduct an adequate investigation is insufficient to provide Defendant an opportunity to cure.

Plaintiff has also alleged in his April notice Defendant's failure to conduct an independent medical examination (hereinafter "IME") during the investigation of his claim. Plaintiff argues that Defendant's failure to conduct an IME, particularly in light of the varying concerns Dr. Goldmsith had with Plaintiff's diagnosis, evidenced Defendant's bad faith in handling Plaintiff's disability claim. Defendant, however, argues Plaintiff has produced no evidence that its decision not to conduct an IME during the investigation in any way harmed Plaintiff. In fact, according to Defendant, an IME was conducted during the state court litigation and it concluded Plaintiff was not disabled. Plaintiff contends that had Defendant conducted an IME during the claim investigation, the results of the IME may have supported his claim. Defendant argues Plaintiff has no evidence to establish that had the IME been conducted during the claim investigation stage instead of during litigation, the IME would have supported his disability claim. While Plaintiff's contention may be weak, this Court will not grant summary judgment. An issue remains whether Defendant's decision

to not conduct an IME during the claim investigation stage damaged Plaintiff to the extent that Defendant's action/inaction constituted bad faith.  Of course, after the Court has heard the evidence, Defendant may again raise this argument.

> *2. Count II.*

In Count II, Plaintiff alleges Defendant engaged in bad faith during mediation in the underlying state court case.  Specifically, Plaintiff alleges Defendant sent a corporate representative to the mediation without sufficient settlement authority.  As the conduct upon which Plaintiff bases his complaint took place during litigation, the litigation privilege attaches and the conduct is not actionable.  See Williams v. Bierman, 46 F.Supp.2d 1262, 1266 (M.D. Fla. 1999); Levin, Middlebrooks, Mabie, Thomas, Mayers & Mitchell P.A. v. United States Fire Insurance Co., 639 So.2d 606, 608 (Fla 1994).  Accordingly, summary judgment as to Count II is granted.

It is therefore ORDERED AND ADJUDGED that Defendant Unum Life Insurance Company of America's Dispositive Motion for Final Summary Judgment and Incorporated Memorandum of Law (Dkt. 107) is **GRANTED in part and DENIED in part** as set forth herein.

**DONE** and **ORDERED** in Tampa, Florida on June 6, 2006.

*[signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2004\04-cv-1615 - Motion for SJ - Insurance Bad Faith.frm